UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAME BELONG LIMITED,<br><br>Petitioner,<br><br>v.<br><br>VINDEX LLC and BELONG GAMING, LLC,<br><br>Respondents. | No. 1:26-cv-06977 |

**GAME BELONG LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF ITS PETITION TO CONFIRM, RECOGNIZE AND ENFORCE A NONDOMESTIC ARBITRAL AWARD AND TO ENTER JUDGMENT**

**KOBRE & KIM LLP**

Brandon C. Bias
Josef M. Klazen
Evelyn Baltodano Sheehan
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
brandon.bias@kobrekim.com
josef.klazen@kobrekim.com
evelyn.sheehan@kobrekim.com

*Counsel for Petitioner GAME Belong Limited*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 3

A. The Parties' Relationship and Underlying Dispute ........ 3
B. The Parties Agreed to Arbitrate All Disputes Under the BLA and the PAA ........ 6
C. The JAMS Arbitration ........ 7
D. The Final Award ........ 8

ARGUMENT ........ 11

A. This Court Has Jurisdiction and Venue is Proper. ........ 11
B. This Court Should Confirm the Final Award Because No Ground for Refusing Recognition Applies ........ 13
C. GAME is Entitled to Post-Award, Prejudgment Interest and to Post-Judgment Interest ........ 18
D. GAME is Entitled to Reasonable Costs and Attorneys' Fees Incurred in Recognizing the Final Award ........ 20

CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bldg. Material Teamsters Loc. 282, I.B.T. v. Cuenca Coronel Trucking, Inc.*,
No. 1:19-CV-8323 (KHP), 2020 WL 4748102 (S.D.N.Y. Aug. 17, 2020) ........ 20, 21

*Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*,
170 F.3d 349 (2d Cir. 1999) ........ 12

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017) ........ 11

*Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*,
832 F.3d 92 (2d Cir. 2016) ........ 15

*D.H. Blair & Co., Inc. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006) ........ 2

*Doctor's Assocs., Inc. v. Stuart*,
85 F.3d 975 (2d Cir. 1996) ........ 12, 13

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005) ........ 15

*First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Food Emps. Union Loc. 338*,
118 F.3d 892 (2d Cir. 1997) ........ 20

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ........ 14, 17

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987) ........ 18

*Hermès of Paris, Inc. v. Swain*,
No. 16-CV-6255, 2016 WL 4990340 (S.D.N.Y. Sept. 13, 2016) ........ 12

*Hotel, Motel & Rest. Emps. & Bartenders Union v. P. & J.G. Enters., Inc.*,
731 F.Supp. 88 (N.D.N.Y. 1990) ........ 20, 21

*In re Soft Drink & Brewery Works Union Loc. 812, IBT, AFL-CIO*,
No. 95 Civ. 8082 (SAS), 1996 WL 420209 (S.D.N.Y. July 25, 1996) ........ 21, 22

*In re Waterside Ocean Nav. Co.*,
737 F.2d 150 (2d Cir. 1984) ........ 18

*K2 Advisors, LLC v. K2 Volatility Fund, LP*,
No. 02 CIV 3984 (AGS), 2002 WL 31235701 (S.D.N.Y. Oct. 4, 2025) .................................. 12

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
364 F.3d 274 (5th Cir. 2004) .................................................................................... 15

*Lewis v. Whelan*,
99 F.3d 542 (2d Cir. 1996) ....................................................................................... 19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ................................................................................................ 18

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*,
No. 03 Civ. 5122 (DAB), 2003 WL 22773355 (S.D.N.Y. Nov. 21, 2003)......................... 20, 22

*N.Y. Hotel & Gaming Trades Council, AFL-CIO v. CSC Hudson*,
762 F. Supp. 3d 338 (S.D.N.Y. 2025) ........................................................................ 18

*N.Y. Hotel & Gaming Trades Council, AFL-CIO v. Key Hotels, LLC*,
No. 1:15-CV-4983 (LJL), 2025 WL 3142060 (S.D.N.Y. Nov. 10, 2025) ............................... 11

*New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
352 F.3d 599 (2d Cir. 2003) ...................................................................................... 19

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*,
508 F.2d 969 (2d Cir. 1974) ................................................................................. 15, 18

*R.W. Chelsea Energie Ltd. v. Vision Indian Ocean (V.I.O.) SA*,
815 F. Supp. 3d 264 (S.D.N.Y. 2025) ......................................................................... 19

*Safran Elecs. & Def. SAS v. Exail SAS*,
764 F.Supp.3d 133 (S.D.N.Y. 2025) ........................................................................... 18

*Serv. Emps. Int'l Union, Loc. 32BJ, AFL-CIO v. Stone Park Assocs., LLC*,
326 F. Supp. 2d 550 (S.D.N.Y. 2004) ......................................................................... 19

*Telenor Mobile Commc'ns AS v. Storm LLC*,
584 F.3d 396 (2d Cir. 2009) ...................................................................................... 18

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. J&V Locks & Doors, Inc.*,
No. 25-CV-113 (AT), 2025 WL 1504695 (S.D.N.Y. May 27, 2025)...................................... 20

*U.S. Polo Assoc., Inc. v. Rivers World LLC*,
No. 1:23-CV-10818 (MKV), 2026 WL 604576 (S.D.N.Y. Mar. 4, 2026)........................... 11,12

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
103 F.3d 9 (2d Cir. 1997) ......................................................................................... 14

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) .......... 14

*Zeiler v. Deitsch*,
500 F.3d 157 (2d Cir. 2007) .......... 2, 11, 15

**Statutes**

9 U.S.C. § 2 .......... 18
9 U.S.C. § 6 .......... 2
9 U.S.C. § 12 .......... 17
9 U.S.C. § 201 .......... 14
9 U.S.C. § 202 .......... 11, 14
9 U.S.C. § 203 .......... 11
9 U.S.C. § 204 .......... 13
9 U.S.C. § 207 .......... 1
9 U.S.C. § 208 .......... 2, 17
28 U.S.C. § 1920 .......... 22
28 U.S.C. § 1961 .......... 19, 22

**Rules**

CPLR 5001(a) .......... 19
CPLR 5004 .......... 19
L.C.R. 54.1 .......... 22
Fed. R. Civ. P. 54(d)(1) .......... 22

**Other Authorities**

New York Convention Article III .......... 1, 14
New York Convention Article IV .......... 14
New York Convention Article V .......... 2, 15, 16, 18

Petitioner GAME Belong Limited ("Petitioner" or "GAME"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Petition to Confirm, Recognize and Enforce a Nondomestic Arbitral Award and to Enter Judgment (the "Petition") against Respondents Vindex LLC ("Vindex") and Belong Gaming, LLC ("Belong," and together with Vindex, "Respondents").

**PRELIMINARY STATEMENT**

On May 1, 2026, at the conclusion of a New York-seated arbitration administered by JAMS, the Honorable James C. Francis IV (Ret.) (the "Arbitrator"), a former United States Magistrate Judge of this District, issued a final award (the "Final Award") in favor of GAME and against Vindex and Belong. The Arbitrator found that Belong breached the parties' agreements by failing to pay contractual milestone installment payments that GAME had earned and by repudiating those agreements outright, and that Vindex breached its written guaranty of two of the unpaid installment payments. The Final Award requires Vindex to pay GAME $4,500,000 in damages plus $793,356.17 in pre-award interest, for a total of $5,293,356.17, and requires Belong to pay GAME $2,000,000 in damages plus $408,328.76 in pre-award interest, for a total of $2,408,328.76—$7,701,684.93 in all. To date, Respondents have not paid GAME one penny of that amount. A duly certified copy of the Final Award is attached as Exhibit A to the Declaration of Brandon C. Bias (the "Bias Decl.").

GAME now asks this Court to confirm and recognize the Final Award and enter it as a judgment against Respondents, pursuant to Section 207 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 207, and Article III of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York

Convention").[1] That task is a narrow one. A petition to confirm does not open a second round of litigation on the merits. Rather, it commences a summary proceeding that is decided and briefed in a manner akin to that of a motion for summary judgment. *See* 9 U.S.C. § 6 (applications "shall be made and heard in the manner provided by law for the making and hearing of motions") (applicable here under 9 U.S.C. § 208); *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (confirmation under the New York Convention "is a summary proceeding in nature"); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (a petition to confirm an award should be treated as "akin to a motion for summary judgment"). Consistent with the strong federal policy in favor of arbitration, the Court therefore should not revisit the merits, reweigh the evidence, or second-guess the Arbitrator's interpretation of the parties' contracts. It must instead confirm the Final Award unless the Respondents carry their heavy burden of proving one of the narrow, exclusive grounds for non-recognition set out in Article V of the New York Convention.

Respondents cannot carry that burden, let alone a heavy one. Each agreed in writing to arbitrate this dispute before a single JAMS arbitrator in New York, New York, under New York law, and neither has ever questioned that agreement's validity. Each received proper notice. Vindex litigated to conclusion through experienced counsel, taking discovery, briefing the merits, presenting evidence during a two-day hearing, and arguing at closing. Belong, though duly served, elected not to appear, and the Arbitrator declined to enter any award on that basis alone, requiring GAME instead to prove its claims by evidence, which it did. The arbitration proceeded as the parties' agreements prescribed. The Arbitrator—an experienced alternative dispute resolution

[1] The Final Award separately found that GAME had met the milestone for the Second Installment Payment of $1,000,000, but held that no relief could be granted on that payment in that arbitration because the parties had not completed the pre-arbitration steps that the parties' agreement requires. Final Award at 23, 25, 32–33. Accordingly, GAME reserves its right to pursue that amount at a later time, whether from Belong or from Vindex as guarantor (but not from both).

professional and former jurist, who served for more than thirty years on the bench including as the Chief Magistrate Judge of this District—decided the questions that the parties submitted to him, in a thirty-four-page, well-reasoned award. That award is final and binding, no court has disturbed it or has been asked to do so, and the statutory period to move to vacate, modify, or correct it has expired. Nor would there be any basis to vacate it under the FAA.

Therefore, the Court should confirm and recognize the Final Award, incorporate its terms into a judgment against Respondents, and award post-award, prejudgment interest through the date of judgment, post-judgment interest, and reasonable attorneys' fees and costs associated with recognizing and enforcing the Final Award, so that GAME, a company located in the United Kingdom, may begin collection efforts in the United States.

## FACTUAL BACKGROUND

### A. The Parties' Relationship and Underlying Dispute

Petitioner GAME is a private limited company incorporated under the laws of the United Kingdom, with its registered address at Unit A Brook Park East, Shirebrook, United Kingdom NG20 8RY. Bias Decl. Ex. D ¶ 7. GAME operates a chain of "Belong Gaming Arenas" in the United Kingdom, facilities equipped for esports (competitive video gaming) at which customers play video games and that host esports tournaments and leagues. Final Award at 3.

Respondent Vindex LLC is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York. Bias Decl. Ex. D ¶ 10; Brand License Agreement (Bias Decl. Ex. B ) at 1. Vindex is an American esports company that collaborates with video game publishers and develops platforms for hosting esports events. Final Award at 3. Vindex is owned by ESL FACEIT Group GmbH, which is in turn indirectly owned and controlled by the Public Investment Fund, the sovereign wealth fund of the Kingdom of Saudi Arabia, through its gaming investment company, Savvy Games Group. Bias Decl. ¶ 12.

Respondent Belong Gaming, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York. Bias Decl. Ex. D ¶ 9; Brand License Agreement (Bias Decl. Ex. B) at 1. Vindex formed Belong in 2020 as a subsidiary to further Vindex's collaboration with GAME and Belong. Final Award at 3–4. Belong ceased ordinary course operations in or about late 2023 and reported that it had no full-time employees. *Id.* at 11, 29–30.

Around 2020, GAME partnered with Vindex to collaborate, through a suite of agreements, in launching esports arenas. *Id.* at 3–4. To further that relationship, Vindex formed Belong as a subsidiary in 2020, and GAME and Belong entered into a Brand License Agreement (the "BLA") and a Platform Access and Services Agreement (the "PAA"), as well as two other agreements not at issue here (an Asset Purchase Agreement, under which Belong acquired certain assets relating to the BELONG brand, and a Consulting Services Agreement, under which GAME agreed to provide consulting services). *Id.* Under the BLA, Belong licensed the "BELONG" trademarks back to GAME and agreed to pay GAME up to $7,500,000 in five separate "Installment Payments" if GAME met specified annual milestones. BLA § 7.1(a). The First, Second, Fourth, and Fifth Installment Payments were $1,000,000 each, and the Third was $3,500,000. *Id.* Vindex agreed, under the BLA, to guarantee any "Undisputed Payments" due to GAME. Final Award at 4–6; BLA §§ 1.133, 7.2, 7.4. Under the PAA, Belong was obligated to develop and provide a digital platform for arenas in the United Kingdom and certain other European territories (the "Provider Platform"). *Id.* at 4, 7–8.

Each milestone under the BLA had three prerequisites (the "Arena Opening Requirements"): GAME had to operate a minimum number of United Kingdom arenas; those arenas had to contain an aggregate minimum number of gaming desks; and GAME had to be using the Provider Platform "save where [GAME] is not using the Provider Platform as a result of

[Belong]'s failure to provide the Provider Platform in accordance with the Platform Access Agreement." BLA § 1.133; Final Award at 4–5.

Under Section 7.3 of the BLA, Belong could dispute whether any Installment Payment was due only by providing GAME with "written notice of such dispute within 30 days following" receipt of notice from GAME that the payment was due. BLA § 7.3. If the parties did not resolve the dispute within 10 days thereafter, they were required to escalate it to their respective CEOs; if the CEOs could not resolve the dispute within 30 days thereafter, the dispute proceeded to non-binding mediation; and only if that failed could a legal action, including an arbitration, be commenced. Final Award at 5–6; BLA § 7.3.

GAME satisfied all the applicable Arena Opening Requirements for the first three milestones: in 2021, 2022 and 2023, it operated the required number of United Kingdom arenas with the required number of desks and Belong never delivered the Provider Platform that would have triggered GAME's obligation to deploy it. *Id.* at 9–11, 17–21. GAME was therefore entitled to the First and Second Installment Payments of $1,000,000 each and the Third Installment Payment of $3,500,000, and it invoiced Belong for all three in accordance with the BLA. *Id.* at 9–11, 21–24.

Yet Belong failed to pay the first three Installment Payments, and Vindex refused to honor its guaranty of those payments. *Id.* at 9–11. Then, in January 2024, after Vindex and Belong underwent corporate ownership changes, Belong (or at least someone acting on its behalf) notified GAME that it had "ceased all ordinary course operations," had "drastically reduced staff," and had "zero full time employees." *Id.* at 11, 29. On August 21, 2024, GAME terminated the BLA and the PAA based on Belong's failure to perform and to make required payments under those agreements, treating Belong's repudiation as a total breach and reserving the right to pursue legal

action (including arbitration) under the agreements. *Id.* at 11–12. A true and correct copy of that letter is attached as Exhibit F to the Bias Declaration.

### B. The Parties Agreed to Arbitrate All Disputes Under the BLA and the PAA

If GAME and Belong could not resolve a dispute over whether an Installment Payment was due after following the dispute resolution process under Section 7.3 of the BLA, Section 14.3 of the BLA required the parties to submit that dispute to final and binding arbitration. BLA §§ 7.3, 14.3.

Section 14.3 of the BLA and Section 11.3 of the PAA each contains a substantially identical arbitration clause providing in pertinent part that:

> any dispute arising out of or related to this Agreement shall be subject to final binding arbitration . . . . The arbitration shall be conducted pursuant to the JAMS Comprehensive Arbitration Rules and Procedures in effect at the time the request for arbitration is made (the "Arbitration Rules"), and in accordance with the Expedited Procedures in those Arbitration Rules, including Rules 16.1 and 16.2, except as modified herein. The arbitration shall take place in New York, New York before a single neutral arbitrator (the "Arbitrator") selected in accordance with the Arbitration Rules. . . . Any award or decision in arbitration shall be final and binding . . . and shall be enforceable by judgment of any court of competent jurisdiction.

BLA § 14.3 (emphasis omitted); PAA § 11.3 (Bias Decl. Ex. C) (emphasis omitted); *see* Final Award at 2. [2]

Both agreements also select New York governing law. Each provides that it "shall be governed by and construed in accordance with the Laws of the State of New York excluding that body of Laws known as conflict of laws." BLA § 14.2; PAA § 11.2; Final Award at 3. Duly certified copies of the BLA and the PAA are attached as Exhibits B and C to the Bias Declaration, respectively.

[2] JAMS Rule 26(a), which applies to the parties' arbitration pursuant to the BLA and the PAA, permits disclosure of an arbitration in a judicial proceeding, as here, to confirm a JAMS arbitral award. *See* JAMS Rules & Procedures, R. 26(a).

### C. The JAMS Arbitration

On February 21, 2025, GAME commenced an arbitration through JAMS pursuant to Section 14.3 of the BLA and Section 11.3 of the PAA by filing and serving a Demand for Arbitration asserting breach-of-contract claims against Vindex and Belong, and seeking an award of prejudgment interest on all amounts owed. Final Award at 1, 12. On April 11, 2025, Vindex submitted its Response to Claimant's Demand for Arbitration and Notice of Counterclaims, a true and correct copy of which is attached as Exhibit D to the Bias Declaration. In that submission, Vindex asserted affirmative defenses, as well as counterclaims against GAME that it later withdrew (likely to avoid producing certain adverse discovery). Final Award at 13; Bias Decl. Ex. D ¶¶ 62–65. Vindex thereafter defended itself against GAME's claims through nearly a year of pre-hearing proceedings, taking documentary discovery, filing a pre-hearing brief, and appearing at the arbitration hearing. Final Award at 12–14. Although Belong did not answer the Demand for Arbitration and did not appear in the arbitration, JAMS served Belong with notice of the arbitration hearing on October 17, 2025. *Id.* at 13, 28.

The Arbitrator, the Honorable James C. Francis IV (Ret.), a former United States Magistrate Judge for the Southern District of New York, was appointed in accordance with the JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules & Procedures"), as the BLA and the PAA required. *Id.* at 2–3, 34. On February 19 and 20, 2026, the Arbitrator conducted a two-day arbitration hearing in New York, New York, at which GAME and Vindex presented evidence and elected to give closing arguments in lieu of post-hearing briefs. *Id.* at 1. Vindex was represented at the hearing by experienced arbitration counsel from Latham & Watkins LLP. Bias Decl. Ex. G at 2. In its opening argument at the hearing, Vindex said it was contesting the Installment Payments demanded by GAME as a "matter of principle" because it viewed GAME's claim as meritless:

> Before I dive into the substance, you know, there's one point that I want to emphasize and, you know, it's why my client Vindex is defending this claim. It's really a matter of principle. This is a relatively discrete dispute in terms of value, but it's really a matter of principle for my client to defend this claim because it believes that the claim is entirely unmeritorious and I'll explain today and we've already done it in our briefing why we have that view.
>
> You know, over a period of time after Belong ceased operations, Vindex in fact had to pay many of the obligations that it had guarant[e]ed and did so, you know, without litigation.
>
> In this circumstance, however, you know, Vindex is firmly of the view that these payments are not owed, that they weren't owed by Belong and therefore should not be owed by Vindex, and that's really, you know, the crux of the issue. It's the reason why my client has decided to expend significant resources in defending what would otherwise seem like a relatively discrete claim and one that should have been easily settled.

*Id.* at 66:10–67:18.[3]

On April 7, 2026, the Arbitrator rejected that position in an interim partial award. He determined that GAME had established breach-of-contract claims against Vindex, entitling GAME to $4,500,000 in principal damages, and had proved claims against Belong, entitling GAME to $2,000,000 million in principal damages. Final Award at 1–2. Those are the same determinations reflected in the Final Award described below, which sets out the rationale for each of them. The Arbitrator left open the amount of pre-award interest, on which he directed the parties to confer. The parties did so, and their interest calculations were incorporated into the Final Award. *Id.*

### D. The Final Award

On May 1, 2026, the Arbitrator issued the Final Award. *Id.* at 34. The Arbitrator first rejected Vindex's contention that GAME lacked standing to arbitrate its claims, holding that the

[3] During cross-examination of one of GAME's witnesses, Vindex's counsel also suggested that Vindex made a $7 million loan to Belong around the time of the applicable spin-off of Belong. Bias Decl. Ex. G at 224:13–15. This would seem to confirm that Vindex and/or Belong had the ability to pay GAME but chose not to do so.

GAME affiliate that signed the BLA and the PAA properly novated its rights and obligations under the BLA to GAME, as Section 14.1(b) of the BLA expressly permitted. *Id.* at 14–15.

On the merits, the Arbitrator found that GAME had satisfied the milestones for the First, Second and Third Installment Payments; that Belong's purported dispute notice as to the First Installment Payment was untimely, having been sent roughly 50 days after the relevant invoice rather than within the required 30 days; and that the purported dispute notice as to the Third Installment Payment was invalid both because it was issued by Vindex rather than Belong and because it was sent roughly 89 days after Belong received the invoice. *Id.* at 21–25. The Arbitrator therefore concluded that Belong was liable for the First and Third Installment Payments, and that the contractual predicates to Vindex's guaranty were satisfied as to each of those payments. *Id.* at 24–25. As for the Second Installment Payment, the Arbitrator found that GAME met the relevant milestone but denied GAME relief at that time, finding that Belong had issued a timely and valid dispute notice and that the parties had not yet completed the escalation and mediation steps that the BLA required before seeking arbitration. *Id.* at 23, 25, 33.

Turning to the claims against Belong, the Arbitrator observed that although JAMS Rule 22(j) authorized him to render an award against a party that fails to attend the hearing after receiving notice, he "may not render an Award solely on the basis of the default or absence of the Party." *Id.* at 28. He therefore required GAME to submit evidence, which he addressed on the merits before awarding any relief against Belong. *Id.*

On that evidence, the Arbitrator held that Belong repudiated the BLA and the PAA by ceasing all ordinary operations before the Fourth and Fifth Installment Payments became due, and that the repudiation entitled GAME to damages for total breach because GAME was willing and able to perform. *Id.* at 29–30.

The Arbitrator held that GAME is entitled to statutory interest on its damages, that an award of prejudgment interest is mandatory under New York law for claims based on breach of contract, and that such interest accrues at the New York statutory rate of nine percent per year. *Id.* at 31. He awarded GAME pre-award interest at that rate through the date of the Final Award. *Id.*

The Final Award thus held Vindex liable to GAME for the following:

1. The First Installment Payment in the principal amount of $1,000,000 together with $264,328.77 in pre-award interest, for a total of $1,264,328.77; and
2. The Third Installment Payment in the principal amount of $3,500,000 together with $529,027.40 in pre-award interest, for a total of $4,029,027.40.

*Id.* at 33.

The Final Award further held Belong liable to GAME for the following:

1. The Fourth Installment Payment in the principal amount of $1,000,000 together with $204,164.38 in pre-award interest, for a total of $1,204,164.38; and
2. The Fifth Installment Payment in the principal amount of $1,000,000 together with $204,164.38 in pre-award interest, for a total of $1,204,164.38.

*Id.*

The Final Award states that it constitutes "full and complete satisfaction of any and all claims that were submitted to the jurisdiction of the Arbitrator," and that it "is effective immediately, without the necessity of further hearing, and may be confirmed in any court having jurisdiction." *Id.* at 33–34.

GAME promptly demanded payment. On May 8, 2026, one week after the Final Award was issued, GAME's counsel emailed Vindex's counsel asking Vindex to confirm that it would pay the amounts awarded by May 22, 2026. Receiving no response, GAME's counsel followed up on May 14, 2026, noting that he had attempted to reach Vindex's counsel by telephone and

would try again the following day. Vindex's counsel replied that he had passed GAME's message to Vindex and that Vindex would be in touch. *See* Bias Decl. Ex. H.

Vindex turned out not to be as principled as it had claimed at the outset of the arbitration. Although the Arbitrator had concluded that GAME's claim for payment was meritorious, Vindex still did not comply with its payment obligations under the Final Award. Neither Vindex nor Belong has paid GAME a penny of the amounts awarded against it.

## ARGUMENT

### A. This Court Has Jurisdiction and Venue is Proper.

#### 1. This Court Has Subject Matter Jurisdiction Because the Final Award Falls Under the New York Convention.

This Court has original subject matter jurisdiction over this action under 9 U.S.C. § 203, which provides that the "district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding falls under the New York Convention because the Final Award arises out of the commercial arbitration agreements in the BLA and the PAA, and GAME is not a citizen of the United States. 9 U.S.C. § 202; *see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017); *Zeiler*, 500 F.3d at 164 (the FAA applies the New York Convention to awards made in an arbitration that, although seated in the United States, is considered "non-domestic").

#### 2. Respondents Are Subject to Personal Jurisdiction Because They Are Headquartered Here and Agreed to Arbitrate Here.

This Court has personal jurisdiction over each Respondent to confirm the Final Award because each has its principal place of business and headquarters in New York, New York. *See N.Y. Hotel & Gaming Trades Council, AFL-CIO v. Key Hotels, LLC*, 2025 WL 3142060, 1:15-CV-4983 (LJL), at *3 (S.D.N.Y. Nov. 10, 2025) (confirming arbitral award and personal jurisdiction over respondent with its principal place of business and office in New York); *U.S.*

*Polo Assoc., Inc. v. Rivers World LLC*, 1:23-CV-10818 (MKV), 2026 WL 604576, at *4 (S.D.N.Y. Mar. 4, 2026) ("The Supreme Court has held that for corporate entities, including limited liability companies, the place of incorporation and principal place of business are paradigm bases for general jurisdiction. . . . Courts have exercised general personal jurisdiction over a limited liability company where the company has been organized under the laws of the forum state or maintains its principal place of business in the forum state" (cleaned up)); *K2 Advisors, LLC v. K2 Volatility Fund, LP*, 2002 WL 31235701, No. 02 CIV 3984 (AGS), at *1 (S.D.N.Y. Oct. 4, 2002) (holding personal jurisdiction existed over Delaware limited liability company defendant because its principal place of business was in New York, New York).

Personal jurisdiction also exists over each Respondent because each agreed to arbitrate this dispute under the BLA and the PAA in New York, New York, and that agreement constitutes consent to the jurisdiction of this Court over a proceeding to confirm the resulting award. Specifically, both the BLA and the PAA provide that:

> any dispute arising out of or related to this Agreement shall be subject to final binding arbitration . . . . The arbitration shall take place in New York, New York before a single neutral arbitrator (the "Arbitrator") selected in accordance with the Arbitration Rules. . . . Any award or decision in arbitration shall be final and binding . . . and shall be enforceable by judgment of any court of competent jurisdiction.

BLA § 14.3 (emphasis omitted); PAA § 11.3 (emphasis omitted). It is "well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999); *see Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996). This Court has accordingly held that "[a] party who agrees to arbitrate in a particular jurisdiction consents to both personal jurisdiction and venue of the courts within that jurisdiction." *Hermès of Paris, Inc. v. Swain*, No. 16-CV-6255, 2016 WL 4990340, at *2 (S.D.N.Y. Sept. 13, 2016).

#### 3. Venue Is Proper Because the Parties Chose New York as the Seat of the Arbitration.

Venue is proper in this Court. Under Section 204 of the FAA, an action to confirm an award falling under the New York Convention may be brought in the "court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States." 9 U.S.C. § 204. And "[a] party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." *Doctor's Assocs.*, 85 F.3d at 983. Here, the parties, in Section 14.3 of the BLA and Section 11.3 of the PAA, agreed to designate New York, New York, as the seat of the arbitration, and the arbitration was held and the Final Award was made there. Venue is therefore proper in this District.[4]

### B. This Court Should Confirm the Final Award Because No Ground for Refusing Recognition Applies.

There can be no genuine dispute that this Court should confirm and recognize the Final Award and enter judgment upon it in GAME's favor and against Respondents. The New York Convention applies to the Final Award and strictly limits the Court's review to whether any of the exclusive grounds for denying confirmation provided under the New York Convention or the FAA applies. The party resisting confirmation bears a heavy burden of establishing one of those grounds. None of them exist here, and neither Respondent can carry that burden.

#### 1. The New York Convention Applies to the Final Award.

The New York Convention is an international treaty signed by over 150 countries, including the United States, designed to facilitate and expedite the recognition and enforcement of

[4] In addition, by agreeing to arbitrate under the JAMS arbitration rules, the parties "shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof." JAMS Rules & Procedures, R. 25.

foreign arbitral awards. It requires that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention, Art. III. The United States implemented the New York Convention through Chapter 2 of the FAA. *See* 9 U.S.C. § 201.

Under the FAA, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial . . . falls under the [New York] Convention" unless it arises out of a "relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. Those requirements are met here because the Final Award arises out of the BLA and the PAA, which are commercial contracts, and GAME is not a citizen of the United States.

Article IV of the New York Convention requires a party seeking confirmation of an award to submit "[t]he duly authenticated original award or a duly certified copy thereof" as well as "[t]he original [arbitration] agreement . . . or a duly certified copy thereof." New York Convention, Art. IV. GAME has submitted those materials. Bias Decl. Exs. A, B, C.

### 2. The Court's Review Is Strictly Limited and Respondents' Burden to Prove Non-Recognition Is Heavy.

Under the New York Convention and controlling Second Circuit case law, the Court's review of the Final Award is "strictly limited." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997). Indeed, because the New York Convention and the FAA provide only very limited grounds on which a court may decide not to recognize an award, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Id.* at 23 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

Thus, the party resisting confirmation bears the burden of proving that one of the grounds explicitly enumerated in the New York Convention or the FAA applies, and that burden "is a heavy one, as the showing required to avoid summary confirmance is high." *Zeiler*, 500 F.3d at 164 (party opposing confirmation "has the burden to prove that one of the seven defenses under the New York Convention applies") (internal quotation marks and citations omitted); *see Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). Unless the party resisting confirmation meets this heavy burden, "a district court *must* enforce an arbitral award." *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) (emphasis in original).

Courts in this and other Circuits have consistently cautioned that the Article V grounds for denying or deferring confirmation are to be construed narrowly. *See, e.g., Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) ("defense[s] to enforcement of a foreign award . . . should be construed narrowly" to "comport with the enforcement-facilitating thrust of the [New York] Convention"); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("[d]efenses to enforcement under the New York Convention are construed narrowly").

### 3. No Ground Exists to Deny Confirmation of the Final Award.

Article V of the New York Convention provides seven "exclusive grounds for refusing confirmation under the [New York] Convention," *Yusuf*, 126 F.3d at 20, under which a "district court *may* choose to refuse recognition of the award," *Corporación Mexicana de Mantenimiento Integral*, 832 F.3d at 106 (emphasis in original). Article V(1) permits courts to deny confirmation only where: (a) a party to the arbitration agreement was under some incapacity or the agreement is invalid; (b) the party against whom the award was invoked was not given proper notice or was otherwise unable to present its case; (c) the award decided matters beyond the scope of the

submission to arbitration; (d) the composition of the tribunal or the arbitral procedure departed from the parties' agreement; or (e) the award has not become binding or has been set aside or suspended by a competent authority. *See* New York Convention, Art. V(1)(a)–(e). Article V(2) provides two additional grounds on which recognition and enforcement may be denied: (f) where the subject matter of the dispute is not capable of settlement by arbitration under the law of the country, or (g) where recognition or enforcement would be contrary to the country's public policy. *See* New York Convention, Art. V(2)(a)–(b). None of those grounds is present here.

*First*, the arbitration agreements in Section 14.3 of the BLA and Section 11.3 of the PAA are valid and no party to either agreement was under any incapacity. The arbitration provisions in the BLA and the PAA were negotiated by sophisticated, counseled commercial parties, and while Vindex disputed GAME's standing to demand arbitration under the BLA (an argument that the Arbitrator rejected, Final Award at 14–15), Vindex never disputed the validity of the arbitration provision during the arbitration proceeding on incapacity grounds or otherwise. Nor could either Respondent do so now.

*Second*, Respondents received proper notice and a full opportunity to be heard. GAME filed its Demand for Arbitration pursuant to the applicable JAMS rules and served it on Vindex and Belong. *Id.* at 12. Vindex responded, appeared through counsel, took discovery, submitted a pre-hearing brief, and participated in the arbitration hearing and closing argument. *Id.* at 1, 12–14. Belong never answered, but JAMS served it with notice of the hearing on October 17, 2025, and Belong simply chose not to appear. *Id.* at 13, 28. A party that receives notice and elects not to participate cannot claim that it was unable to present its case. In any event, the Arbitrator declined to rest any award on Belong's absence, requiring GAME instead to prove its claims by evidence, which it did. *Id.* at 28. Neither Respondent has ever argued that it lacked notice of the arbitration or an opportunity to present its case.

*Third*, the Final Award decides only the disputes that were submitted to the Arbitrator. Section 14.3 of the BLA and Section 11.3 of the PAA sweep broadly, submitting to arbitration "any dispute arising out of or related to this Agreement." BLA § 14.3; PAA § 11.3. GAME's demand asserted that Belong failed to pay the milestone Installment Payments due under the BLA and repudiated both agreements and that Vindex breached its guaranty of those payments under Section 7.4 of the BLA. Final Award at 12. The Arbitrator properly determined that "all claims are properly before this Tribunal," *id.* at 3, and decided those claims and no others, *id.* at 33.

*Fourth*, the Arbitrator and the arbitration procedure conformed to the parties' agreement. Consistent with the BLA's and the PAA's requirements, the arbitration was administered by JAMS under the JAMS Rules and Procedures, took place in New York, New York, and was conducted by a single neutral arbitrator selected in accordance with JAMS rules. BLA § 14.3; PAA § 11.3; Final Award at 2–3.

*Fifth*, the Final Award is binding and has not been set aside or suspended. It is, by its terms, "the Final Award in this Arbitration," "effective immediately, without the necessity of further hearing," and "may be confirmed in any court having jurisdiction." *Id.* at 34. The BLA and the PAA likewise provide that "[a]ny award or decision in arbitration shall be final and binding." BLA § 14.3; PAA § 11.3. The Final Award has not been vacated, modified, corrected, set aside or suspended, and no proceeding seeking such relief is pending in this or any other court. Bias Decl. ¶ 16. Respondents' opportunity to challenge the Final Award has also closed: the three-month period to serve notice of a motion to vacate, modify, or correct the award ran on August 1, 2026, and neither Respondent served any such motion on GAME, *see* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.") (applicable here under 9 U.S.C. § 208), and that forecloses vacatur "even when raised as a defense to a motion to confirm," *Florasynth*,

750 F.2d at 175; *see Safran Elecs. & Def. SAS v. Exail SAS*, 764 F.Supp.3d 133, 139 (S.D.N.Y. 2025). And because the arbitration was seated in New York and governed by New York law, no court outside New York would be a competent authority to set aside the Final Award.

*Sixth*, the dispute between the parties is capable of settlement by arbitration under United States law. This is a commercial contract dispute that is plainly arbitrable. *See* 9 U.S.C. § 2; *RAKTA*, 508 F.2d at 975 (rejecting this defense as to international breach of contract claims, which do not implicate a "special national interest in judicial, rather than arbitral, resolution").

*Finally*, recognition and enforcement of the Final Award is consistent with the United States' strong policy favoring arbitration. Article V(2)(b)'s public policy exception "must be 'construed very narrowly' " and reaches only awards that "would violate our most basic notions of morality and justice." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 (2d Cir. 2009) (citation omitted); *accord RAKTA*, 508 F.2d at 974. An award of compensatory damages to a foreign company for breach of a commercial contract, such as the Final Award, offends no such notion of morality and justice. Instead, *refusing* to enforce the Final Award would undermine the "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 847 (2d Cir. 1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).

### C. GAME is Entitled to Post-Award, Prejudgment Interest and to Post-Judgment Interest.

"An arbitration award confirmed under the FAA bears interest from the date of the award until judgment confirming it." *N.Y. Hotel & Gaming Trades Council, AFL-CIO v. CSC Hudson*, 762 F. Supp. 3d 338, 344 (S.D.N.Y. 2025) (cleaned up); *In re Waterside Ocean Nav. Co.*, 737 F.2d 150, 153–54 (2d Cir. 1984). District courts generally defer to prejudgment interest rates "the

Arbitrator already determined . . . to be suitable." *R.W. Chelsea Energie Ltd. v. Vision Indian Ocean (V.I.O.) SA*, 815 F. Supp. 3d 264, 277 (S.D.N.Y. 2025). Where an arbitration agreement is "silent" on the applicable rate, "courts within the Second Circuit" will "grant interest at a rate of 9%, the rate of prejudgment interest under New York State law." *Serv. Emps. Int'l Union, Loc. 32BJ, AFL-CIO v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). Under New York law, prejudgment interest is mandatory for claims based on breach of contract and accrues at nine percent per year. *See* CPLR 5001(a), 5004; *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 607 (2d Cir. 2003) ("C.P.L.R. 5001(a) provides for mandatory prejudgment interest for breach-of-contract judgments").

Here, GAME is entitled to prejudgment interest that accrues post-award, which must be calculated based on New York's statutory prejudgment interest rate of nine percent per year. Although the BLA and the PAA are silent on the applicable interest rate, both expressly select New York law to "govern[]" disputes arising from the agreements. BLA § 14.2; PAA § 11.2. And as the Arbitrator has already concluded, New York law requires an award of prejudgment interest at the rate of nine percent per year. Final Award at 31.

Post-judgment interest will accrue on the judgment confirming the Final Award at the rate prescribed by federal law under 28 U.S.C. § 1961. *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (an "award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered").

A calculation of the amounts due, including post-award, prejudgment interest accrued through the date of this filing, is attached as Exhibit E to the Bias Declaration. That calculation is consistent with the interest calculations that the parties agreed to and that were incorporated into the Final Award. If the Court grants the Petition, GAME will submit an updated claim calculation

and proposed form of judgment, as contemplated in the Proposed Order and Judgment filed herewith.

### D. GAME is Entitled to Reasonable Costs and Attorneys' Fees Incurred in Recognizing the Final Award.

GAME is also entitled to the reasonable attorneys' fees and costs it has incurred in recognizing and enforcing the Final Award. "In the context of a petition to confirm an arbitration award," reasonable attorneys' fees and costs may be awarded where the respondent "'has refused to abide by an arbitrator's decision without justification.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. J&V Locks & Doors, Inc.*, No. 25-CV-113 (AT), 2025 WL 1504695, at *3 (S.D.N.Y. May 27, 2025) (quoting *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Food Emps. Union Loc. 338*, 118 F.3d 892, 898 (2d Cir. 1997) (alteration adopted)).

A respondent lacks justification when it declines to comply with an arbitral award simply because it disagrees with the arbitrator's decision. *See Bldg. Material Teamsters Loc. 282, I.B.T. v. Cuenca Coronel Trucking, Inc.*, 1:19-CV-8323 (KHP), 2020 WL 4748102, at *7 (S.D.N.Y. Aug. 17, 2020) (holding that respondent's public-policy, excess-of-authority, and manifest-disregard challenges to the award, which the court rejected, failed to "provide sufficient justification to escape liability for attorney's fees"); *Hotel, Motel & Rest. Emps. & Bartenders Union v. P. & J.G. Enters., Inc.*, 731 F.Supp. 88, 92 (N.D.N.Y. 1990) (awarding fees incurred in confirming and enforcing an award where respondent resisted it on the grounds that it was contrary to the facts and that the respondent could not pay).

A respondent also lacks justification when it agrees to arbitrate but does not participate in arbitration, fails to pay an award, never moves to vacate or modify the award, and never argues that the award is invalid. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Eastern Millenium Const., Inc.*, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21,

2003) (awarding fees where respondent, despite agreeing to submit disputes under agreement to "binding arbitration," "chose not to participate in the arbitration proceedings or even to oppose" confirmation of award); *In re Soft Drink & Brewery Works Union Loc. 812, IBT, AFL-CIO*, No. 95 Civ. 8082 (SAS), 1996 WL 420209, at *1, 3 (S.D.N.Y. July 25, 1996) (awarding fees where arbitration was held pursuant to the parties' agreement, but respondent "neither appeared at the hearing nor submitted a defense," "failed to either pay the award or file a motion to vacate or modify," and "has not argued that the award is invalid").

Vindex's refusal to pay lacks any justification. At the hearing, Vindex told the Arbitrator that it was contesting the Installment Payments "really [as] a matter of principle," despite that it had paid other of Belong's obligations it had guaranteed "without litigation," because it "believe[d] that the claim is entirely unmeritorious" and it was "firmly of the view" that these particular payments "are not owed." Bias Decl. Ex. G at 66:10–67:18. The Arbitrator rejected that view, holding Belong liable for the First and Third Installment Payments and Vindex liable on its guaranty of each. Final Award at 24–25, 32–33. Even if Vindex disagrees with the Arbitrator's conclusion, that would not justify refusing to comply with the Final Award, especially where Vindex did not even challenge the Final Award to a court within the allotted three-month period. Thus, Vindex refused to abide by the Final Award without justification. *See Bldg. Material Teamsters Loc. 282*, 2020 WL 4748102 at *7; *Hotel, Motel & Rest. Emps. & Bartenders Union, Inc.*, 731 F.Supp. at 92.

Belong's refusal to pay also lacks any justification. It agreed, under the BLA and the PAA, to submit the dispute over the Installment Payments to final and binding arbitration. BLA § 14.3; PAA § 11.3; Final Award at 2–3. Yet despite being provided notice of the arbitration, including by JAMS, Belong chose not to participate in the arbitration, has not paid GAME any portion of the Final Award, has never argued that the Final Award is invalid, has not moved to vacate, modify

or correct it, and has allowed the statutory period to do so to lapse. Final Award at 12, 13, 28; Bias Decl. ¶¶ 14–15. Belong therefore refused to abide by the Arbitrator's decision without justification. *See N.Y.C. Dist. Council of Carpenters*, 2003 WL 22773355 at *3; *Soft Drink & Brewery Workers*, 1996 WL 420209 at *3. [5]

GAME therefore respectfully requests that the judgment confirming the Final Award include the reasonable attorneys' fees, costs, and expenses that GAME incurs in converting the Final Award into a judgment and in enforcing that judgment, in an amount to be established by subsequent submission.[6]

## CONCLUSION

For the foregoing reasons, GAME respectfully requests that the Court grant the Petition, confirm, recognize and enforce the Final Award, enter judgment in GAME's favor and against Vindex in the amount of $5,293,356.17 and against Belong in the amount of $2,408,328.76, award post-award, prejudgment interest on those amounts at the New York statutory rate of nine percent per annum from May 1, 2026 through the date judgment is entered, award post-judgment interest pursuant to 28 U.S.C. § 1961, award reasonable attorneys' fees and costs associated with recognizing and enforcing the Final Award, and grant such other and further relief as the Court deems just and proper.

[5] If GAME prevails here, it would also be entitled to any costs, and any taxes imposed on such costs, that it incurs in confirming and enforcing the Final Award. *See* Fed. R. Civ. P. 54(d)(1); L.C.R. 54.1; 28 U.S.C. § 1920.

[6] Nor do the parties' agreements bar this relief. The BLA and the PAA address only the costs "for the arbitration," BLA § 14.3; PAA § 11.3, and the Arbitrator accordingly directed that the fees of that arbitration proceeding be borne as incurred, Final Award at 33. Neither agreement speaks to the fees that GAME has been and will be forced to incur in seeking judicial recognition and enforcement of the Final Award.

Dated: August 14, 2026
New York, New York

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ *Brandon C. Bias*

Brandon C. Bias
Josef M. Klazen
Evelyn Baltodano Sheehan
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
brandon.bias@kobrekim.com
josef.klazen@kobrekim.com
evelyn.sheehan@kobrekim.com

*Counsel for Petitioner GAME Belong Limited*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum of law complies with the word count limitation set forth in Local Civil Rule 7.1(c). According to the word count feature of the word-processing system used to prepare this document, the memorandum contains 7,448 words, excluding the caption, table of contents, table of authorities, signature block, and any required certificates.

/s/ *Brandon C. Bias*

Brandon C. Bias

*Counsel for Petitioner GAME Belong Limited.*